In the

# United States Court of Appeals

### For the Seventh Circuit

No. 02-1301

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

BRIAN K. COLE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 01 CR 20053—**Michael P. McCuskey**, *Judge.*

ARGUED JULY 9, 2002—DECIDED AUGUST 1, 2002

Before POSNER, RIPPLE and WILLIAMS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Brian Cole pleaded guilty to distributing five or more grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B)(iii). At sentencing the district court determined that Mr. Cole qualified as a career offender based on two prior convictions. Mr. Cole appeals, arguing that the district court erred in sentencing him as a career offender. We affirm.

## I

### BACKGROUND

In June 2001, federal authorities in the Central District of Illinois charged Mr. Cole with five counts of distribut-

ing cocaine and cocaine base. Mr. Cole ultimately pleaded guilty to Count 2 of the indictment, which charged him with distributing five or more grams of cocaine base. The Presentence Investigation Report ("PSR") revealed that Mr. Cole had a lengthy criminal record, including two felony convictions that potentially qualified him as a career offender. *See* U.S.S.G. § 4B1.1. Under the guidelines, a defendant is deemed a career offender and faces a steeper sentence if he has two or more prior felony convictions for either controlled substance offenses or crimes of violence. *See* U.S.S.G. §§ 4B1.1, 4B1.2(a). The PSR showed that Mr. Cole had a prior state conviction for unlawful delivery of a controlled substance and a prior state conviction for "mob action."

At sentencing Mr. Cole conceded that his state drug conviction qualified as a controlled substance offense but argued that the "mob action" offense was not a crime of violence. *See id.* § 4B1.2(a). In the state mob action case, Mr. Cole pleaded guilty to acting with a group of people who shot out the windows of several vehicles. Mr. Cole argued at sentencing that the mob action offense involved only damage to property and thus did not constitute a crime of violence under the guidelines. The district court disagreed, concluding that discharging a firearm in a populated area posed a "serious potential risk of physical injury" to others and therefore constituted a crime of violence. Cole's Short App. at 13. Based on the mob action conviction and the state drug conviction, the court concluded that Mr. Cole qualified as a career offender.

Because Mr. Cole's current drug offense carries a maximum life sentence, *see* 21 U.S.C. § 841(b)(1)(B), the court calculated his offense level at 37. *See* U.S.S.G. § 4B1.1. Based on his guilty plea, the court reduced Mr. Cole's offense level by three points for acceptance of responsibility. Mr. Cole's

total offense level, combined with the criminal history category of VI that automatically applies to career offenders, yielded a sentencing range of 262 to 327 months. On the Government's motion the court granted Mr. Cole a three-level downward departure for substantial assistance. *See* U.S.S.G. § 5K1.1. This yielded a sentencing range of 188 to 235 months. The court sentenced Mr. Cole to 200 months' imprisonment, eight years' supervised release and a $100 special assessment. Mr. Cole filed a timely notice of appeal.

## II

## ANALYSIS

Mr. Cole raises one argument on appeal, namely, that the district court erred in sentencing him as a career offender. Whether the district court properly sentenced Mr. Cole as a career offender is a question of law we review de novo. *See United States v. Hoults,* 240 F.3d 647, 650 (7th Cir. 2001). Under the guidelines, a defendant qualifies as a career offender if three criteria are met: (1) the defendant is over 18 at the time he committed the instant offense; (2) the instant offense is a felony that constitutes either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions for either crimes of violence or controlled substance offenses. *See* U.S.S.G. § 4B1.1.

Here, the first two elements are not in dispute. Mr. Cole was more than 18 years old when he committed the instant offense, and his offense of conviction, distributing five or more grams of cocaine base, qualifies as a controlled substance offense. *See* U.S.S.G. § 4B1.2(b); 21 U.S.C. § 841(a)(1), § 841(b)(1)(B)(iii). With respect to the third element, prior felony convictions, the parties agree that

Mr. Cole's prior conviction for unlawful delivery of a controlled substance qualifies as a controlled substance offense for purposes of § 4B1.1. The only dispute on appeal is whether Mr. Cole's state mob action conviction constitutes a "crime of violence" under the guidelines. The sentencing guidelines define a "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). In determining whether a prior conviction constitutes a crime of violence, the district court must confine its inquiry to the face of the charging document and the statutory definition of the offense. *See Hoults*, 240 F.3d at 650; *United States v. Shannon*, 110 F.3d 382, 384 (7th Cir. 1997).

Here, Mr. Cole was charged with violating the Illinois mob action statute, 730 ILCS 5/25-1. Mob action constitutes a felony for purposes of the guidelines because the offense is punishable by a maximum of three years' imprisonment. *See* § 4B1.2(a); 730 ILCS 5/5-8-1(a)(7). The mob action statute does not have as a necessary element the use or threatened use of physical force against a person. *See* U.S.S.G. § 4B1.2(a)(1). Rather, the statute encompasses both violent and nonviolent offenses, criminalizing "the use of force or violence disturbing the peace by 2 or more persons," as well as the more general "assembly of 2 or more persons to do an unlawful act." *See* 730 ILCS 5/25-1. Nor is mob action one of the enumerated offenses in § 4B1.2(a)(2) (burglary of a dwelling, arson, extortion, or an offense involv-

ing use of explosives). The remaining question, then, is whether Mr. Cole's offense "otherwise involves conduct that presents a serious potential risk of *physical injury to another.*" *See id.* at § 4B1.2(a)(2) (emphasis added); *Hoults,* 240 F.3d at 650.

In the mob action case, the state information alleged that Mr. Cole "knowingly, by the use of force and violence, disturbed the public peace . . . while acting together with one or more persons without authority of law, shot out windows and struck the motor vehicles of Judy Green, Andy Grimm, and J.H. Stewart, thereby inflicting injury to the property of another." Cole's Short App. at 21. Mr. Cole argues in his brief that the mob action offense is not a crime of violence because "the conduct involved only violence against property and not to people." Cole's Br. at 8.

We have held, however, that an offense posing a risk of harm to persons may constitute a crime of violence even when the defendant did not intend to cause such harm. In *United States v. Rutherford,* 54 F.3d 370 (7th Cir. 1995), we observed that reckless criminal acts can be just as dangerous as intentional conduct. Accordingly, we concluded that the "otherwise" clause of § 4B1.2(a)(2) includes crimes of recklessness where the crime, by its nature, presents a substantial risk of harm to others. *See id.* at 376 (drunk driving presents serious potential risk of physical injury to another and thus qualified as a crime of violence); *see also United States v. Jernigan,* 257 F.3d 865, 866-67 (8th Cir. 2001) (offense of negligent homicide constituted crime of violence); *United States v. Jackson,* 177 F.3d 628, 632-33 (7th Cir. 1999) (criminal recklessness offense constituted crime of violence).

As the district court concluded here, discharging a firearm is an inherently risky act. Even though shots were not

aimed at a particular person, the actions of the mob could easily have caused an injury; the case law is replete with examples of bystanders being hurt by ricocheting bullets. *See, e.g., Medeiros v. O'Connell*, 150 F.3d 164, 166 (2d Cir. 1998) (bullet fired by state trooper ricocheted off van and hit bystander); *United States v. Page*, 84 F.3d 38, 41 (1st Cir. 1996) (bullet aimed at ground ricocheted up and struck victim); *Johnson v. United States*, 628 F.2d 187, 192 (D.C. Cir. 1980) (noting danger posed to bystanders from ricocheting bullets fired by federal agent); *United States v. Molina*, 963 F. Supp. 213, 214 (E.D.N.Y. 1997) (during bank robbery, bystander was struck by ricocheting bullet from gun of armored car guard).

Because of the inherent risks associated with firearms, courts have concluded that firing—or in some cases even pointing—a firearm constitutes a crime of violence. *See United States v. Chapple*, 942 F.2d 439, 441 (7th Cir. 1991); *United States v. McNeal*, 900 F.2d 119, 121 (7th Cir. 1990); *see also United States v. Rutledge*, 33 F.3d 671, 674 (6th Cir. 1994) (firing gun in direction of coworker, even though in jest, constituted crime of violence because it placed coworker in imminent danger of serious injury); *United States v. Thompson*, 891 F.2d 507, 510 (4th Cir. 1989) (pointing firearm at another person constituted crime of violence because risk of physical force was "invariably present"). The state charging document here alleges that Mr. Cole, along with others, used "force and violence" to shoot out the car windows. The mere act of firing at a vehicle poses some inherent risk to others, for how could the shooter be sure that the vehicle is unoccupied? Although the indictment itself does not describe whether people were present during the shooting, we have another source—one to which Mr. Cole did not object—that clarifies any ambiguity in the charging document about the dangerous nature of Mr. Cole's conduct.

Ordinarily, a sentencing court must confine itself to the charging document and statutory definition of the offense; we have, however, allowed some deviation from this rule when both of these sources prove ambiguous. In *Shannon*, while affirming the general rule, our court sitting en banc observed that a court may look beyond the charging document in cases where it is "otherwise impossible to determine the proper classification of the offense." *See Shannon*, 110 F.3d at 384. A court may look to such evidence only when doing so does not require a hearing to resolve contested issues of fact. *Id.* In *Shannon*, we cited with approval prior cases in which the court looked to undisputed extrinsic evidence to resolve ambiguity in a charging document. *See id.* (citing *United States v. Sebero*, 45 F.3d 1075, 1078 (7th Cir. 1995); *United States v. Spell*, 44 F.3d 936, 939 (11th Cir. 1995); *United States v. Smith*, 10 F.3d 724, 733-34 (10th Cir. 1993)). For example, in *Sebero*, we found no error in the district court's examination of a presentence report which "merely helped clarify a potential ambiguity in the charging document," since the facts in the report did not contradict any of the other evidence presented. *Sebero*, 45 F.3d at 1078; *see also Xiong v. INS*, 173 F.3d 601, 606 (7th Cir. 1999) (considering undisputed facts outside indictment to determine whether offense constituted crime of violence under 18 U.S.C. § 16(b) because indictment itself was ambiguous).

At sentencing the government introduced a transcript from Mr. Cole's state plea hearing to shed light on the underlying events in the mob action case. Mr. Cole's attorney had summarized the factual basis for his guilty plea as follows:

> [B]asically what the evidence would show is there was a fight involving Mr. Cole and one of the named victims; that the other people or other Co-Defendants

> in this case became involved in that fight. Subsequent to that fight, shots were fired in the manner charged in the information in this case. Some of the witnesses said Mr. Cole did it. Mr. Cole has denied that, but there is evidence that would make him guilty of that or potentially make him guilty of that as a co-conspirator or part of the group that was involved in this action.

Cole's Short App. at 22-23. Mr. Cole did not object to the transcript at sentencing. Indeed, Mr. Cole relied on the transcript to support his argument that the mob action offense could not be a crime of violence because he disputed that he was the actual shooter. Mr. Cole makes a similar argument on appeal and attaches a copy of the state transcript in support. The state transcript shows that other people were present in the area at the time of the shooting; the incident occurred after a fight, and there were other people near enough to identify Mr. Cole as the shooter. Accordingly, Mr. Cole's mob action offense posed a "serious potential risk of physical injury to another" and therefore constitutes a crime of violence. *See* U.S.S.G. § 4B1.2(a).

Mr. Cole raises a somewhat undeveloped argument in his brief that the mob action offense cannot be considered a crime of violence because the charging document and plea hearing transcript are "insufficient to demonstrate beyond a reasonable doubt" that he himself fired any shots. Cole's Br. at 11. Without explanation, Mr. Cole cites *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in support of this argument. *Apprendi*, however, does not affect sentencing guidelines determinations like the one at issue here; rather, it is "limited to situations in which findings affect *statutory* maximum punishments." *United States v. Behrman*, 235 F.3d 1049, 1054 (7th Cir. 2000) (emphasis in original).

Moreover, whether Mr. Cole fired any shots during the incident is beside the point. Mr. Cole concedes that he was "accountable for the actions of the group." His active participation in a violent mob posed a danger to others regardless of who in the group actually fired the shots.

## Conclusion

For all of the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*