# In the
# United States Court of Appeals
## For the Seventh Circuit

————————

No. 04-2929

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

FREDDY ROSAS,

*Defendant-Appellant.*

————————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 03-CR-239—**Rudolph T. Randa**, *Chief Judge.*

————————

ARGUED DECEMBER 15, 2004—DECIDED MARCH 24, 2005
AS AMENDED MAY 19, 2005

————————

Before BAUER, COFFEY, and SYKES, *Circuit Judges.*

PER CURIAM. Freddy Rosas was convicted of drug and gun crimes and sentenced as a career offender under U.S.S.G. § 4B1.1 to a total of 262 months imprisonment, based in part on his prior Wisconsin conviction for fleeing a police officer. In this appeal Rosas argues that he is not a career offender because, he says, his conviction for fleeing a police officer is not a qualifying "crime of violence." Like the district court, however, we conclude that *United States v. Howze*, 343 F.3d 919, 921 (7th Cir. 2003), compels the conclusion that under the Wisconsin statute at issue, fleeing a

police officer is categorically a crime of violence. However, because the judge sentenced Rosas under a mandatory sentencing guidelines system that, after *United States v. Booker*, 125 S. Ct. 738 (2005), is now advisory, we order a limited remand in accordance with *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005) to determine if the judge would have imposed the same sentence had he known that the Guidelines were merely advisory.

## I.

Rosas pleaded guilty to distributing cocaine, 21 U.S.C. § 841(a)(1), possessing a firearm during and in relation to a drug offense, 18 U.S.C. § 924(c), and possession of a firearm by a felon, *id.* § 922(g)(1). Rosas had several prior Wisconsin convictions, including a felony conviction for a drug offense and another under Wis. Stat. § 346.04(3) for fleeing a police officer. The probation officer recommended that Rosas be sentenced under U.S.S.G. § 4B1.1 as a career offender, a guideline applicable if the defendant has at least two prior felony convictions for either a crime of violence or a controlled substance offense. The probation officer concluded that Rosas' flight conviction under § 346.04(3), which qualified as a crime of violence, along with his state drug conviction provided the two convictions necessary for sentencing him as a career offender. Rosas' base offense level otherwise would have been 24, and with a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1 and a Category VI criminal history score, he might have faced an imprisonment range of 77 to 96 months. The proposed career offender guideline, however, increased his base offense level to 37, and with the decrease for acceptance of responsibility, Rosas' total offense level was 34, yielding a recommended imprisonment range of 262 to 327 months. The district court imposed concurrent sentences for 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 922(g)(1),

240 and 120 months respectively, and a 60-month consecutive sentence for 18 U.S.C. § 924(c) for a "total term of 262 months imprisonment." Additionally, the court ordered Rosas to serve five years of supervised release and pay a 300 dollar assessment and a 2,000 dollar fine.

At sentencing Rosas objected to the characterization of his fleeing conviction as a crime of violence. He offered three reasons. First, he argued that *Howze*, which holds in the context of 18 U.S.C. § 924(e) that all flights to avoid arrest pose a serious potential risk of physical injury and thus are categorically "violent felonies," did not control because *Howze* analyzes § 924(e) and the related armed career criminal guideline, U.S.S.G. § 4B1.4, rather than the career offender guideline, *id.* § 4B1.1. Second, Rosas argued that, even if applicable, *Howze* should be reconsidered because a recent addition to the Wisconsin statute creating an additional misdemeanor provision for flight from the police renders the decision overbroad. And, third, he argued that certain conduct prohibited by § 346.04(3) does not include an element of risk to qualify it as a "crime of violence." The district court concluded that it was bound by *Howze* and held that Rosas' fleeing conviction did qualify as a "crime of violence" because, despite the different sentencing provisions at stake, the conduct described in *Howze* and in Rosas' case is the same. Regarding Rosas' argument about the amendment to § 346.04 after *Howze* was decided, the district court reasoned that the change was irrelevant since, as Rosas concedes, even after the amendment his conduct would amount to a felony, not a misdemeanor. Finally, the court looked to the conduct underlying Rosas' conviction and concluded that, indeed, his flight from police had created a potential risk of physical injury. On appeal Rosas reasserts the three arguments he made in district court, and adds a fourth contesting the district court's reliance on information from outside his charging instrument in concluding that the conduct underlying his fleeing conviction presented a seri-

ous potential risk of physical injury. Rosas also contends that his sentence runs afoul of *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and this court's decision in *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004).

## II.

Under § 4B1.1, a defendant is a career offender if he is being sentenced for a crime of violence or drug trafficking offense committed after he turned 18 and he has at least two prior felony convictions for either crimes of violence or controlled substance offenses. U.S.S.G. § 4B1.1(a). A "crime of violence" is a state or federal felony that is either enumerated in the guideline definition, or "has as an element the use, attempted use, or threatened use of physical force against the person of another," or "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a). Fleeing a police officer is not one of the felonies enumerated in the guideline definition, and Wisconsin's statute does not include any element of force, so flight from police can be a crime of violence only if it fits within the "otherwise" clause of § 4B1.2. A district court's decision to sentence a defendant as a career offender is a question of law reviewed de novo. *United States v. Cole*, 298 F.3d 659, 661 (7th Cir. 2002).

In arguing that *Howze* should not control, Rosas correctly observes that the decision actually decided that flight under § 346.04(3)—the very statute at issue in this case—is a "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e), which the Guidelines implement in § 4B1.4, not § 4B1.1. This distinction is significant, says Rosas, because Application Note 1 to § 4B1.4 states that the definitions of "violent felony" and "crime of violence" are "not identical." True enough, but the relevant language in the definition of "violent felony" at issue in *Howze*—"or otherwise involves conduct that presents a serious potential

risk of physical injury to another"—is identical to the "otherwise" clause of the definition of "crime of violence" found in § 4B1.2. *Compare* 18 U.S.C. § 924(e)(2)(B)(ii), U.S.S.G. § 4B1.4, comment. (n.1), *with* U.S.S.G. § 4B1.2(a). Rosas concedes this point, but simply insists, without elaboration, that there is a material distinction between *Howze* and his case because different provisions of the Guidelines are at stake.

In fact there is no distinction. In *Howze* itself, we explained that *United States v. Shannon*, 110 F.3d 382 (7th Cir. 1997) (en banc), viewed the career offender guideline and the Armed Career Criminal Act as "interchangeable." *See Howze*, 343 F.3d at 924. And at least as to the "otherwise" clause in both the definition of "violent felony" and the career offender definition of "crime of violence," Rosas makes no argument as to why cases interpreting the same language in one provision should not apply equally to the other. We note that, at the time *Howze* was decided, the clause at stake in both the Armed Career Criminal Act and in the career offender definition ("or otherwise involves conduct that presents a serious potential risk of physical injury to another") was identical to what is in use today. Moreover, although the precise question has not been before this court, the Sixth Circuit—relying on *Howze*—has concluded that flight does qualify as a "crime of violence" under § 4B1.2. *See United States v. Martin*, 378 F.3d 578, 582-83 (6th Cir. 2004) (characterizing § 924(e) analysis in *Howze* as "a comparable conclusion").

Rosas also argues that *Howze*'s holding should not control because, he contends, a recent amendment that expanded Wis. Stat. § 346.04 to allow charging flight from the police either as a misdemeanor or felony renders *Howze* overbroad and undermines the decision. The statute now includes a new subsection (2t) that reads: "No operator, after having received a visible or audible signal to stop his or her vehicle from a traffic officer or marked police vehicle, shall know-

ingly resist the traffic officer by failing to stop his or her vehicle as promptly as safety reasonably permits." Wis. Stat. § 346.04(2t). Rosas takes the position that the Wisconsin legislature, by creating a misdemeanor provision, has recognized that "all flights do not create felonious risk-creating conduct." Appellant's Br. at 28. The short answer is that a misdemeanor cannot be a crime of violence and that *Howze* analyzes § 346.04(3), not § 346.04(2t). In any event, the new section does not appear to alter the approach to conduct previously proscribed by § 346.04(3), but rather criminalizes a new class of conduct. *Compare* Wis. Stat. § 346.04(3), *with id.* § 346.04(2t). Moreover, Rosas' argument regarding the implications of misdemeanor flight is purely hypothetical, as Rosas concedes that his conduct would still be charged and resolved as a felony even after the amendment to § 346.04. As applied to Rosas and § 346.04(3), *Howze* is not undermined at all.

Because *Howze* compels the conclusion that a violation of § 346.04(3) is categorically a crime of violence, Rosas' next two arguments have no relevance. Rosas insists that his particular violation of § 346.04(3), as charged in the Information, did not pose a potential risk of physical injury to another. Under a categorical approach, though, there is no need to evaluate the language of the charging instrument: *Howze* rejected the argument that there is a way to violate § 346.04(3) that does not involve the creation of risk and concluded, as a per se rule with respect to that provision, "all flights involve that risk-creating conduct." *Howze*, 343 F.3d at 922. For the same reason it does not matter that the district court appears to have erroneously evaluated Rosas' flight conviction by looking to the underlying conduct. *See, e.g.*, *United States v. Cole*, 298 F.3d 659, 662 (7th Cir. 2002) (confining a district court's evaluation to charging documents, except in certain circumstances).

That leaves only the *Blakely/Booker* issues surrounding Rosas' sentence. As we have explained thus far, the district

court correctly categorized Rosas' prior conviction as a crime of violence under the Sentencing Guidelines. However, our analysis does not end there. While his appeal was pending before this court Rosas raised a valid, albeit untimely, *Booker/Blakely* claim challenging the propriety of his sentence.[1] Thus, our review is for plain error only. *See United States v. White*, No. 03-2875, slip op. at 12 (7th Cir. May 3, 2005); *Paladino*, 401 F.3d at 481. In determining whether we may correct an error that was not raised during trial, "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' If all three conditions are met an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Cotton*, 535 U.S. 625, 631 (2002) (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)) (internal citations omitted).

As this court recently articulated in a number of decisions, plain error will be found to exist even in the absence of a constitutional violation by virtue of the "mere mandatory application of the Guidelines [and] the district court's belief that it was required to impose a Guidelines sentence." *White*, slip op. at 13; *United States v. Castillo*, Nos. 02-3584 & 02-4344, slip op. at 32 (7th Cir. May 3, 2005); *United States v. Schlifer*, 403 F.3d 849, 853 (7th Cir. 2005). Thus, even though Rosas' Sixth Amendment rights were not violated by the district court's use of prior convictions to en-

---

[1] Rosas' claim was raised for the first time in a petition for rehearing before this court. A similar circumstance was addressed in *United States v. Macedo*, Nos. 02-3563, 02-3564 & 02-3842, slip op. at 2 (7th Cir. Apr. 14, 2005), and we held that raising a claim in a petition for rehearing is the functional equivalent of raising a claim at any other time that an appeal is pending before an appellate court, i.e., the claim is considered forfeited and review is exclusively for plain error. *See id.* at 16.

hance his sentence, *see Almendarez-Torres v. United States*, 523 U.S. 224, 244 (1998),[2] a plain error has occurred due to the district court's belief at sentencing that the Guidelines were mandatory and binding; a belief which we now know to be mistaken. *See Booker*, 125 S. Ct. at 756.

Thus, we must only determine whether Rosas' "substantial rights" have been affected and, if so, whether we may exercise our discretion to remedy the situation. This is a case where, having reviewed the record, we do not know with certainty what the district court would have done had it known that the Sentencing Guidelines were merely advisory. Indeed, during the sentencing hearing the trial judge highlighted the gravity of the offense that he had committed, yet sentenced Rosas at the low end of the Guidelines range, highlighting the fact that the court was "bound by the Sentencing Guidelines." Thus, we consider it appropriate, while retaining jurisdiction over the matter, to order a limited remand consistent with our decision in *Paladino*, 401 F.3d at 483-84, so that we might determine whether—in light of the now-advisory nature of the Guidelines—the district court would have imposed a different sentence.

### III.

While retaining jurisdiction, we REMAND this matter to the district court for proceedings consistent with *Paladino*, 401 F.3d at 483-84.

---

[2] Although the Supreme Court recently narrowed the scope of the *Almendarez-Torres* exception for prior convictions in *Shepard v. United States*, 125 S. Ct. 1254 (2005), that decision has no bearing on Rosas' case due to the fact that the categorization of his prior conviction as a "crime of violence" rests exclusively on an examination of the statute of conviction, a judicial inquiry not proscribed by *Shepard. See United States v. Ngo*, No. 04-2662, slip op. at 5 (7th Cir. May 3, 2005).

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*